## THE H. C. WAHLBERG.

### LORENTZEN v. SCHLEHEN et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1898.)

### No. 384.

1. MARITIME LIENS—SALE OF CARGO—DISPOSITION OF PROCEEDS.

Where one, under contract to purchase the entire catch of a schooner upon a proposed seal-hunting expedition, lent money to her owner and master upon the security of a mortgage on the schooner, and later advanced money for the wages of her crew, and for necessary repairs and supplies in a foreign port, *held*, that the proceeds of sale of the catch should be first applied to reimbursement of the latter advances, in so far as they were justified, rather than to payment of the loan.

2. SEAMEN—WAGES—FORFEITURE.

Where shipping articles provide that members of the crew shall not be entitled to wages until return to the home port, their refusal, in a foreign port, to proceed with the voyage, no excuse for such refusal appearing, works a forfeiture of their right to wages.

Appeal from the District Court of the United States for the Northern District of California.

Anders & Frank, for appellant.

C. A. Carter and H. W. Hutton, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The question presented by this appeal is whether or not the intervener, Lorentzen, should be allowed to participate in the distribution of the proceeds of the sale of the schooner Wahlberg, he having been denied that right by the court below, and such proceeds having been by that court distributed to—First, those rendering services on board the schooner at the request of, or under contract with, her master; and, second, to those who furnished supplies for the schooner in this state, at the request of the master. The schooner was a domestic vessel, San Francisco being her home port.

By section 813 of the Code of Civil Procedure of California it is provided, among other things, as follows:

"All steamers, vessels, and boats are liable: (1) For services rendered on board at the request of or on contract with their respective owners, masters, agents, or consignees. (2) For supplies furnished in this state for their use at the request of their respective owners, masters, agents, or consignees. (3) For work done or materials furnished in this state for their construction, repairs, or equipment. * * * Demands for these several causes constitute liens upon all steamers, vessels, and boats, and have priority in their order herein enumerated and have preference over all other demands."

One James Crew was the managing owner of the schooner, and as such, on the 13th day of December, 1893, entered into a written agreement with the intervener, Lorentzen, who was a dealer in fur seal skins in San Francisco, whereby Crew agreed to send the schooner on a hunting and fishing voyage in the waters of the North Pacific Ocean, and to sell and deliver at San Francisco to Lorentzen all the fur seal skins obtained by the vessel during the season of 1894, Lorentzen binding himself to pay to Crew, as such managing owner, certain stipulated prices for the catch of the voyage delivered at San Francisco prior to December 31, 1894. Five days afterwards, to wit, on the 18th day of December, 1893, Lorentzen loaned Crew $2,800, taking therefor Crew's promissory note in that sum, together with a mortgage on the schooner as security therefor. The vessel sailed from San Francisco January 18, 1894, to the coast of Japan, with Crew as master, one Gus Schlehen as mate, a cook, a cabin boy, three hunters, and five seamen. By the terms of the agreement attached to the shipping articles, each and every officer and seaman who should well and truly perform the voyage and comply with the regulations and duties specified in the agreement, and commit no dishonest or unlawful act, should be "entitled to the payment of his share of the net proceeds of the voyage, pursuant to this agreement, as soon after the return of said schooner to San Francisco as the oil and other products of the voyage can be sold and the settlement adjusted by the owner or agent." The respective shares designated in the agreement were as follows: For the master, mate, and hunters, "as per agreement"; for the cook, $50 per month; for the cabin boy, 20 cents for each skin delivered on board the schooner (excluding grey pups); for each seaman, 20 cents for each skin delivered on board the schooner. While the vessel was in Japanese waters, the master was taken sick, and was landed at Hokodata, Japan, where he died, in July, 1894. The mate, Schlehen, thereupon took charge of the vessel as master, and took her to Yokohama. At Yokohama was the firm of Ahrens & Co., correspondents of the intervener, Lorentzen. On August 22, 1894, Ahrens & Co. cabled Lorentzen as follows: "Wahlberg arrived here yesterday. 191 seals. Please send instructions forthwith." To which Lorentzen replied, August 25, 1894, as follows: "Watch our interest. Send vessel and cargo here. Will pay crew." On the 30th of August, 1894, Ahrens & Co. cabled Lorentzen to the effect that the crew and hunters refused to proceed further, and that the schooner was in need of repairs, and was entirely without provisions, to which Lorentzen replied as follows: "Discharge [pay off] the crew according to agreement. Provide what is necessary. Engage a fresh crew." Ahrens & Co. accordingly paid to

the master and crew of the schooner in Yokohama $1,413.22, and for supplies furnished and repairs to the schooner $774.09, and for expenses on the cargo of the schooner $165.18, and also for other advances, including cash paid to Capt. Crew and the expenses of his last illness, $741.94, aggregating $3,094.43, for which they drew on Lorentzen at San Francisco, which draft Lorentzen paid. From Yokohama there were sent to Lorentzen, at San Francisco, by steamer, 128 skins of the catch of the schooner, including the skins of 27 pups, for which Lorentzen realized $1,096; and upon return of the schooner to San Francisco, which was done by means of a new crew shipped at Yokohama, Lorentzen received from the schooner 108 skins, besides the skins of 85 pups, for which he realized $1,298, aggregating $2,394. The claim preferred by him by means of his intervention includes, in addition to the $3,094.43 paid on the draft of Ahrens & Co., the $2,800, loaned by Lorentzen to Crew on the 13th of December, 1893, aggregating $5,894.43, from which, in his account, he deducts the $2,394 realized by him for the skins, but which amount he claims the right to apply in part payment of the $2,800 loan, leaving the whole amount of the advances made in Yokohama by Ahrens & Co. for Lorentzen unpaid, and which the latter contends are preferred in character to the claims for supplies furnished in this state for the use of the schooner, upon the request of her master, prior to the commencement of the voyage.

There are several reasons why we think the court below was right in refusing to sustain this contention on the part of Lorentzen. It will be sufficient to state one or two. In the first place, he had not a particle of right to appropriate the proceeds of the skins to the payment of the money loaned by him to Crew on December 18, 1893. For that loan he took Crew's note, secured by a mortgage upon the schooner. By his contract of December 13, 1893, he agreed to buy the skins constituting the catch, and pay for them at certain stipulated rates. Out of that purchase money, expenses necessarily incurred on the voyage were properly payable; and, out of the net proceeds, the officers and men of the crew were entitled to their respective shares, in accordance with the agreement annexed to the shipping articles, for the services rendered by them on the voyage. If, therefore, it be conceded that the $1,413.22 paid by Lorentzen through Ahrens & Co., at Yokohama, to those of the crew who refused to proceed with the voyage, was properly paid, the proceeds of the skins are properly applicable to the reimbursement of that payment so far as necessary. But, according to the shipping articles, not one of the officers or men of the crew was entitled to pay for his services until the return of the schooner to her home port. They were not therefore entitled to be paid in Yokohama by anybody. By their refusal at that place to proceed with the voyage,—no excuse for such refusal appearing,—they forfeited their right to pay.

What has been said with respect to the application of the proceeds of the skins to the payment of the seamen's wages applies equally to the advances for supplies and repairs to the vessel made

at Yokohama by Lorentzen, through Ahrens & Co., and to the advances there made for expenses on the schooner's cargo. Even if it be conceded to be shown that those advances were made on the credit of the vessel, the proceeds of the skins are properly applicable to their repayment. It results that the judgment must be affirmed, and it is so ordered.